# ADDENDUM 1

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLUMBIA | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor<br>CAPITOL HILL GROUP | Case Number<br>02-0359  Chapter 11 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Newmark of Washington D.C. LLC<br>d/b/a Newmark & Bank Company | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent:<br>Christopher B. Mead, Esquire<br>London & Mead<br>1225 19th Street, N.W., #320, D.C.  20036<br>Telephone number: 202-331-3334 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court.  **FILED**  JUN ? 2002  THIS SPACE IS FOR COURT USE ONLY  DeN/Ah Curtis, Clerk  U.S. Bankruptcy Court for D.C. |
| Account or other number by which creditor identifies debtor:<br>N/A | Check here if this claim  ☐ replaces  ☐ amends  a previously filed claim, dated: _____ |

**1. Basis for Claim**
- ☐ Goods sold
- XX Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☒ Wages, salaries, and compensation (fill out below)
  Your SS #: 22-3738087
  Unpaid compensation for services performed
  from January, 2000 to April, 2001
       (date)                (date)

**2. Date debt was incurred:** at time of services

**3. If court judgment, date obtained:** N/A

**4. Total Amount of Claim at Time Case Filed:**  $ $454,025.00
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
XX Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>6-26-02 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): *[signature]* Christopher B. Mead, attorney |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## AMOUNT OF CLAIM

Commission for services rendered:

Purchase and Sale Agreement dated March 24, 2000:

| | |
|---|---|
| Sale Amount: | $3,000,000.00 |
| Commission Amount (1%) | $30,000.00 |
| Pre-judgment Interest: | |
| - 4/01-10/01 (6%) | 900.00 |
| - 11/01 - 12/01 (5%) | 250.00 |
| - 1/02 - 7/02 (4%) | 600.00 |
| | $31,750.00 |

Purchase and Sale Agreement dated December 8, 2000:

| | |
|---|---|
| Sale Amount: | $13,300,000.00 |
| Commission Amount (3%) | $399,000.00 |
| Pre-judgment Interest: | |
| - 4/01-10/01 (6%) | 11,970.00 |
| - 11/01 - 12/01 (5%) | 3,325.00 |
| - 1/02 - 7/02 (4%) | 7,980.00 |
| | $422,275.00 |

TOTAL AMOUNT OF CLAIM:    $454,025.00

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| NEWMARK OF WASHINGTON D.C. LLC <br> d/b/a NEWMARK & BANK COMPANY <br> 1341 Connecticut Avenue, N.W. <br> Washington, D.C. 20036 <br><br> Plaintiff, <br><br> v. <br><br> CAPITOL HILL GROUP, <br> 700 Constitution Avenue, N.E. <br> Washington, D.C. 20002 <br><br> and <br><br> PETER SHIN <br> 6750 Greentree Road <br> Bethesda, Maryland 20817 <br><br> Defendants. | Case 01-0005815 <br><br> JURY TRIAL DEMANDED <br><br> RECEIVED <br> Civil Clerk's Office <br><br> AUG 0 2 2001 <br><br> Superior Court of the <br> District of Columbia <br> Washington, D.C. |

## COMPLAINT

This is a complaint for breach of contract, or, in the alternative, for recovery for services rendered (quantum meruit).

## JURISDICTION

1.   This Court has jurisdiction because the parties contracted in the District of Columbia, this lawsuit involves brokerage services performed in connection with the sale of property in the District of Columbia, and Defendants Capitol Hill Group and Dr. Peter Shin do business in the District of Columbia.

1

## PARTIES

2. Plaintiff Newmark of Washington D.C. LLC d/b/a Newmark & Bank Company ("Newmark") is a District of Columbia limited liability company formed in 2000. Newmark owns the assets of The Laurence Bank Companies, LLC, d/b/a The Bank Companies ("The Bank Companies"), including the rights of The Bank Companies under the contract and claims for damages from Defendants that are the subject of this lawsuit. Newmark and The Bank Companies entered into the contracts and performed the services at issue in this Complaint. At all times relevant to this Complaint, a principal of Newmark and The Bank Companies, Laurence Bank, and a Vice President of Newmark and The Bank Companies, Lisa Benjamin, were licensed real estate brokers in the District of Columbia.

3. On information and belief, Defendant Capitol Hill Group is a California Nonprofit Mutual Benefit Corporation, having its principal office at 700 Constitution Avenue, N.E., and owns property at 700 Constitution Avenue, N.E. ("the Property").

4. Defendant Peter Shin is a medical doctor, upon information belief is the primary shareholder in Defendant Capitol Hill Group, and at all times relevant to this Complaint was the authorized and apparent agent of Defendant Capitol Hill Group.

## ALLEGATIONS COMMON TO ALL COUNTS

5. In January 2000, Dr. Peter Shin requested the assistance of The Bank Companies and Laurence Bank and Lisa Benjamin in determining how to maximize economic return from the Property at 700 Constitution Ave., N.E. Dr. Shin was considering leasing a portion of the Property to a physicians' group.

6. Bank and Benjamin toured the Property, met repeatedly with Dr. Shin, and reviewed current and prospective leasing arrangements for the Property. The Bank Companies recommended residential redevelopment of the Property.

7. By February, 2000, The Holladay Corporation ("Holladay") had expressed to Dr. Shin an interest in considering purchasing part of the Property for residential redevelopment, or in joint venturing residential redevelopment of part of the Property. Bank and Benjamin met with representatives of Holladay to discuss development options, lot pricing, and sale versus participation agreements. Bank and Benjamin helped research, review, and negotiate a contract dated March 24, 2000, in which Holladay agreed to purchase part of the Property.

8. On March 27, 2000, Laurence Bank wrote Dr. Shin a letter confirming the terms under which The Bank Companies was performing services in connection with the Property. The letter provided that The Bank Companies would receive below market compensation for their services at $125 per hour for the time of Bank and Benjamin, and a 1% commission on the purchase price of the Property. The letter confirmed the terms of an oral agreement where Dr. Shin had requested that The Bank Companies accept below market brokerage compensation because the hospital operating on the Property was not financially strong and Dr. Shin represented that he was interested in a long term business relationship with The Bank Companies. At Dr. Shin's request, Laurence Bank, on behalf of The Bank Companies, orally offered the $125 hourly rate and a 1% commission, and Dr. Shin orally agreed to those terms.

9. The Bank Companies never received a signed copy of the March 27, 2000 letter agreement from Dr. Shin. However, in accordance with the March 27 agreement, Dr. Shin paid an invoice for the services of Bank and Benjamin at the rate of $125 an hour.

10. Holladay's March, 2000 contract to purchase part of the Property included a study period. During the study period, Bank and Benjamin worked with Holladay and Dr. Shin to address title issues, due diligence issues, and Holladay's concerns about costs of relocating utilities.

11. In continuing to work with Holladay and Dr. Shin, Benjamin and Bank analyzed the potential economic returns for the remaining portion of the Property, and advised Dr. Shin that selling the remainder of the Property for redevelopment would maximize economic benefits to Dr. Shin and Capitol Hill Group.

12. In September, 2000, Dr. Shin invited Laurence Bank for a round of golf. During their golf game, Bank, acting on behalf of Newmark, told Dr. Shin that he had agreed to below market compensation for the initial services performed for Dr. Shin and Capitol Hill Group. However, the value provided by Bank and Benjamin in analyzing the economic benefits of selling the remainder of the Property, and negotiating the sale of the remainder of the Property, called for the normal market rate of a 3% commission on the sale of the remainder of the Property. Dr. Shin agreed to those terms.

13. On September 29, 2000, Bank sent Dr. Shin a letter amending the March 27, 2000 letter agreement. The September 29, 2000 amended agreement provided that Newmark would earn a 1% commission on the sale of the first portion of the Property, and a 3% commission on the sale of the remainder of the Property (described as lot 76, the North Tower). The September 29, 2000 amended agreement provided that the compensation for services at an hourly rate would terminate.

14.  Dr. Shin did not return a signed copy of the September 29, 2000 amended agreement, but never rescinded his oral agreement to those terms, and continued to employ the services of Newmark, Bank and Benjamin.

15.  Defendant Capitol Hill Group concluded a contract to sell the remainder of the Property to Holladay. Upon information and belief, Capitol Hill Group closed on a portion of the Property in or about April, 2001, and is scheduled to close on the sale of the remaining portion of the Property to Holladay in November, 2001.

16.  After concluding the contract to sell the remainder of the Property to Holladay, Dr. Shin announced that he had no intention of paying anything more than $125 hour for the services of Newmark, The Bank Companies, Bank, and Benjamin, and claimed that he had never agreed to pay percentage commissions. Although, on information and belief, Defendant Capitol Hill Group has already received a portion of the sale price for the Property, Dr. Shin and Capitol Hill Group have refused to pay Newmark the agreed commission.

## COUNT I
(Breach of Contract against Capitol Hill Group)

17.  Plaintiff incorporates paragraphs 1-16 of the Complaint as though they were fully restated here.

18.  Through its agent Dr. Shin, Defendant Capitol Hill Group agreed to the terms of the March 27, 2000 letter agreement and the September 29, 2000 amended agreement.

19.  In return for Dr. Shin's promises of compensation, The Bank Companies and Newmark promised to provide, and did provide, expertise in advising Defendants about the leasing and sale options for the Property, and in negotiating successful contracts to sell the

5

Property.

20. Capitol Hill Group has breached the terms of the March 27, 2000 letter agreement and the September 29, 2000 amended agreement by refusing to pay Newmark the percentage commission it is due. Dr. Shin's statement that he would not pay any percentage commissions constitutes an anticipatory breach of the contracts between the parties.

WHEREFORE, Newmark demands a declaratory judgment against Defendant Capitol Hill Group that the March 27, 2000 letter agreement and September 29, 2000 amended agreement remain in full force and effect, and judgment for damages in the amount of 1% on the sale of the first portion of the Property, and 3% on the sale of the remaining portion of the Property, to be determined from the final sales prices for the Property, plus payment for the hourly services of Bank and Benjamin prior to September 29, 2000 (an amount exceeding $10,000), plus the costs of this action, pre and post judgment interest, and such other and further relief as the Court may deem appropriate.

## COUNT II
(Quantum Meruit)(against all Defendants)

21. Plaintiff incorporates paragraphs 1-20 as if restated in this Count.

22. Defendants Dr. Shin and the Capitol Hill Group requested that Plaintiff perform services for them in connection with the management, leasing, and or/sale of the Property.

23. Plaintiff expended considerable resources, expenses, and time providing services to Defendants related to the Property in circumstances where it was understood by all parties that Plaintiff was expecting compensation for its services, and Defendants expected to compensate Plaintiff for its services.

24. Defendants have not compensated Plaintiff for its services, and have announced that they do not intend to compensate Plaintiff at market rates for its services, and under the circumstances it would be inequitable and unjust for Defendants to have obtained the value of Plaintiff's services without compensating Plaintiff according to reasonable industry standards and practices.

WHEREFORE, Plaintiff demands judgment against each of the defendants, jointly and severally, and damages in the amount of $500,000 or in such greater amount as may be determined at trial, plus the costs of this action, pre and post judgment interest, and such other and further relief as the Court may deem appropriate.

### JURY DEMAND

Plaintiff demands trial before a jury on all claims.

Respectfully submitted,

Mark London                 #293548
Christopher B. Mead    #411598
London & Mead
Suite 320
1225 19th Street, N.W.
Washington, D.C. 20036
(202) 331-3334
Counsel for Plaintiff

# PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") dated as of the 24th day of March, 2000 (the "Effective Date"), is made by and between **THE HOLLADAY CORPORATION**, a Delaware corporation having an office at 3400 Idaho Avenue, N.W., Washington, D.C. 20016 ("Purchaser") and **CAPITOL HILL GROUP**, a California Nonprofit Mutual Benefit Corporation, having its principal office at 700 Constitution Avenue, N.E., Washington, D.C. 20002 ("Seller").

## RECITALS:

R-1. Seller and Purchaser desire to enter into certain transactions pursuant to which (a) Seller shall sell to Purchaser, or its permitted nominees or assigns, certain real property located in the District of Columbia, along with certain related personal and intangible property, (b) Purchaser, or its permitted nominees or assigns shall purchase such real, personal and intangible property from Seller, and (c) Seller and Purchaser, or affiliates, successors or assigns of Seller and Purchaser shall form a Joint Venture and Seller shall sell to such Joint Venture certain other real property located in the District of Columbia, along with certain related personal and intangible property.

R-2. Seller and Purchaser, intending to be bound by this Agreement, desire to set forth herein the terms, conditions and agreements under and by which Seller shall consummate the foregoing transactions.

## AGREEMENTS:

NOW, THEREFORE, in consideration of the mutual agreements and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

1. **THE PROPERTY.**

   1.1 <u>Description</u>. Subject to the terms and conditions of this Agreement, and for the consideration set forth herein, (a) Seller and Purchaser hereby agree to form, or cause to be formed, the Joint Venture (defined in Section 1.3, below) pursuant to and in accordance with Section 1.3, below, (b) Seller hereby agrees to sell, assign and convey, and Purchaser hereby agrees to purchase and acquire, all of Seller's right, title and interest in and to the Town House Land (defined in Section 1.1.1, below), (c) Seller hereby agrees to sell, assign and convey, and Purchaser and Seller each hereby agree that the Joint Venture shall purchase and acquire, all of Seller's right, title and interest in and to the Apartment Building Land (defined in Section 1.1.1, below), and (d) Purchaser and Seller each hereby agree that Seller shall sell, assign and convey, and (i) Purchaser shall purchase and acquire all of Seller's right, title and interest in and to all of the property described in Sections 1.1.2 through 1.1.10, below, to the extent the same relates to the Town House Land, and (ii) the Joint Venture shall purchase and acquire all of Seller's right, title and interest in and to all of the property described in Sections 1.1.2 through 1.1.10, below, to the extent the same relates to the Apartment Building Land. The Town House Land, Apartment Building Land and all other real personal and intangible to be sold, assigned and conveyed by

WAS1 #803575 v5

5.3 Broker. Seller and Purchaser each represents to the other that it has had no dealings, negotiations, or consultations with any broker, representative, employee, agent or other intermediary in connection with the sale of the Property, except that Purchaser has used the services of Julien J. Studley, Inc. (the "Broker") and Purchaser shall be solely responsible for paying the fees and commissions owed to the Broker, pursuant to a separate written agreement and except that Seller has used the services of The Bank Companies (the "Bank Companies") and Seller shall be solely responsible for paying the fees and commissions owed to the Bank Companies, pursuant to a separate written agreement. Seller and Purchaser agree that each will indemnify, defend and hold the other free and harmless from the claims of any other broker(s), representative(s), employee(s), agent(s) or other intermediary(ies) claiming to have represented Seller or Purchaser, respectively, or otherwise to be entitled to compensation in connection with this Agreement or in connection with the sale of the Property. This mutual indemnity shall survive Closing and any termination of this Agreement.

5.4 Survivability. All of the representations of Seller and Purchaser made in this Agreement and in any other instrument or agreement entered into in connection herewith, shall survive recordation of the Deed and Closing hereunder for a period of one (1) year.

## 6. CONDITIONS PRECEDENT TO CLOSING.

6.1 Conditions. The obligation of Purchaser to consummate the conveyance of the Property hereunder is subject to the full and complete satisfaction of each of the following conditions precedent:

6.1.1 The representations and warranties of Seller contained in this Agreement shall be true, complete and accurate, on and as of the date hereof and the Date of Closing as if the same were made on and as of such date.

6.1.2 (a) Title to the Property shall be good and marketable, insurable by the Title Company (the "Title Policy"), and with such endorsements as Purchaser or its lender shall require, in a form acceptable to Purchaser at the Title Company's standard rates (both with respect to the form of the Title Policy and any endorsements thereto), without exceptions or reservations of any type or kind except the Permitted Exceptions; and (b) the Title Company shall be irrevocably committed to issue to Purchaser the Title Policy, immediately upon Closing.

6.1.3 Seller shall have performed all material obligations and covenants of Seller to be performed hereunder.

6.1.4 The Property shall not be adversely affected by any Hazardous Materials other than as disclosed in the Environmental Reports. Seller shall have operated and maintained the Property in accordance with commercially reasonable standards.

6.1.5 The Property shall not be subject to any condemnation or taking by any governmental authority pursuant to the power of eminent domain, and no such action or proceeding shall have been threatened.

**IN WITNESS WHEREOF,** Purchaser and Seller have executed this Agreement on the dates set forth below, effective as of the date first set forth above.

SELLER:

**CAPITOL HILL GROUP**

By: _____
Name: *[signature]*
Title: *Pres of*

PURCHASER:

**THE HOLLADAY CORPORATION**

By: _____
Name: *Rita J. Bambling*
Title: Vice President

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") dated as of the 8th day of December, 2000 (the "Effective Date"), is made by and between **THE HOLLADAY CORPORATION**, a Delaware corporation having an office at 3400 Idaho Avenue, N.W., Washington, D.C. 20016 ("Purchaser") and **CAPITOL HILL GROUP**, a California Nonprofit Mutual Benefit Corporation, having its principal office at 700 Constitution Avenue, N.E., Washington, D.C. 20002 ("Seller").

### RECITALS:

R-1.  Seller and Purchaser desire to enter into certain transactions pursuant to which (a) Seller shall sell to Purchaser, or its permitted nominees or assigns, certain real property located in the District of Columbia, along with certain related personal and intangible property, and (b) Purchaser, or its permitted nominees or assigns shall purchase such real, personal and intangible property from Seller.

R-2.  Seller and Purchaser, intending to be bound by this Agreement, desire to set forth herein the terms, conditions and agreements under and by which Seller shall consummate the foregoing transactions.

### AGREEMENTS:

NOW, THEREFORE, in consideration of the mutual agreements and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

1. **THE PROPERTY.**

    **1.1 Description.** Subject to the terms and conditions of this Agreement, and for the consideration set forth herein, (a) Seller hereby agrees to sell, assign and convey, and Purchaser hereby agrees to purchase and acquire, all of Seller's right, title and interest in and to the Town House Land (defined in Section 1.1.1, below), (b) Seller hereby agrees to sell, assign and convey, and Purchaser hereby agrees to purchase and acquire, all of Seller's right, title and interest in and to the Apartment Building Land (defined in Section 1.1.1, below), and (c) Purchaser and Seller each hereby agree that Seller shall sell, assign and convey, and Purchaser shall purchase and acquire, all of Seller's right, title and interest in and to all of the property described in Sections 1.1.2 through 1.1.10, below to the extent the same relates to the Town House Land and the Apartment Building Land. The Town House Land, Apartment Building Land and all other real personal and intangible to be sold, assigned and conveyed by Seller and purchased and acquired by Purchaser shall be referred to herein collectively as the "Property", and shall mean and include the following:

    **1.1.1** The following parcels of land located in the District of Columbia, being a portion of the property known as 700 Constitution Avenue, N.E., Washington, D.C., and more

Federal or state bankruptcy law is pending against or, to the best of Purchaser's knowledge, contemplated by Purchaser.

       5.3    Broker. Seller and Purchaser each represents to the other that it has had no dealings, negotiations, or consultations with any broker, representative, employee, agent or other intermediary in connection with the sale of the Property, except that Purchaser has used the services of Julien J. Studley, Inc. (the "Broker") and Purchaser shall be solely responsible for paying the fees and commissions owed to the Broker, pursuant to a separate written agreement and except that Seller has used the services of The Bank Companies (the "Bank Companies") and Seller shall be solely responsible for paying the fees and commissions owed to the Bank Companies, pursuant to a separate written agreement. Seller and Purchaser agree that each will indemnify, defend and hold the other free and harmless from the claims of any other broker(s), representative(s), employee(s), agent(s) or other intermediary(ies) claiming to have represented Seller or Purchaser, respectively, or otherwise to be entitled to compensation in connection with this Agreement or in connection with the sale of the Property. This mutual indemnity shall survive Closing and any termination of this Agreement.

       5.4    Survivability. All of the representations of Seller and Purchaser made in this Agreement and in any other instrument or agreement entered into in connection herewith, shall survive recordation of the Deed and the East and West Wing Closing hereunder for a period of one (1) year.

## 6. CONDITIONS PRECEDENT TO CLOSING.

       6.1    Conditions. The obligation of Purchaser to consummate each conveyance of a portion of the Property hereunder is subject to the full and complete satisfaction of each of the following conditions precedent:

       **6.1.1** The representations and warranties of Seller contained in this Agreement shall be true, complete and accurate, on and as of the date hereof and the Date of Closing as if the same were made on and as of such date.

       **6.1.2** (a) Title to the Property shall be good and marketable, insurable by the Title Company (the "Title Policy"), and with such endorsements as Purchaser or its lender shall require, in a form acceptable to Purchaser at the Title Company's standard rates (both with respect to the form of the Title Policy and any endorsements thereto), without exceptions or reservations of any type or kind except the Permitted Exceptions; and (b) the Title Company shall be irrevocably committed to issue to Purchaser the Title Policy, immediately upon Closing.

       **6.1.3** Seller shall have performed all material obligations and covenants of Seller to be performed hereunder; including but not limited to the obligations contained in Section 4.10 in the case of any Apartment Building Land Closing.

       **6.1.4** The Property shall not be adversely affected by any Hazardous Materials other than as disclosed in the Environmental Reports. Seller shall have operated and maintained the Property in accordance with commercially reasonable standards and the property shall be vacant as required herein.

IN WITNESS WHEREOF, Purchaser and Seller have executed this Agreement on the dates set forth below, effective as of the date first set forth above.

SELLER:

**CAPITOL HILL GROUP**

By: _____[signature]_____
Name:
Title:


PURCHASER:

**THE HOLLADAY CORPORATION**

By: _____[signature]_____
Name:
Title:

WAS1 #89... 25