# ADDENDUM 4

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| NEWMARK OF WASHINGTON, D.C. LLC d/b/a NEWMARK & BANK CO.<br><br>v.<br><br>CAPITOL HILL GROUP, et al.<br><br>Defendants. | C.A. No. 01ca005815<br><br>Sr. Judge Leonard Braman<br>Calendar #7<br>Next event: Initial Conference 11/2/01 |

### DECLARATION OF LAURENCE BANK

I, Laurence Bank, declare as follows:

1. I am over 18 years of age and competent to testify about the matters in this Declaration from personal knowledge.

2. At all times relevant to this Declaration, I was a licensed real estate broker in the District of Columbia.

3. In January, 2000, I was a principal in the Laurence Bank Companies, LLC, d/b/a the Bank Companies ("The Bank Companies"). Lisa Benjamin, a licensed real estate broker in the District of Columbia at all times relevant to this Declaration, worked with me at The Bank Companies.

4. In January 2000, Dr. Peter Shin requested the assistance of The Bank Companies in determining how to maximize economic return from a property at 700 Constitution Ave., N.E. ("the Property"). Dr. Shin was considering the leasing the Property to a physicians' group.

5. I came to understand that Dr. Shin was an authorized representative and principal owner of the corporate entity that owned the Property, Defendant Capitol Hill Group. I learned from contract documents that Capitol Hill Group was a California Corporation. Capitol Hill

Group admitted in paragraph 3 of its Answer in this case that it is a California corporation.

6. Lisa Benjamin and I toured the Property, met repeatedly with Dr. Shin, and reviewed current and prospective leasing arrangements for the Property. On behalf of the Bank Companies, we recommended residential redevelopment of the Property.

7. By February, 2000, The Holladay Corporation ("Holladay") had expressed to Dr. Shin an interest in considering purchasing part of the Property for residential redevelopment, or in joint venturing residential redevelopment of part of the Property. Lisa Benjamin and I met with representatives of Holladay to discuss development options, lot pricing, and sale versus participation agreements. We helped research, review, and negotiate a contract dated March 24, 2000, in which Holladay agreed to purchase part of the Property.

8. On March 27, 2000, I wrote Dr. Shin a letter confirming the terms on which The Bank Companies were performing services in connection with the Property. The letter provided that The Bank Companies would receive below market compensation for their services at $125 per hour for the time of Lisa Benjamin and myself, and a 1% commission on the purchase price of the Property. The letter confirmed the terms of an oral agreement where Dr. Shin had requested that The Bank Companies accept below market brokerage compensation because the hospital operating on the Property was not financially strong and Dr. Shin represented that he was interested in a long term business relationship with The Bank Companies. At Dr. Shin's request, on behalf of The Bank Companies I orally offered the $125 hourly rate and a 1% commission, and Dr. Shin orally agreed to those terms.

9. The Bank Companies never received a signed copy of the March 27, 2000 letter agreement from Dr. Shin. However, in accordance with the March 27 agreement, Dr. Shin paid

for the services of Lisa Benjamin and myself at the rate of $125 an hour. Holladay's March, 2000 contract to purchase part of the Property included a study period. During the study period, Lisa Benjamin and I worked with Holladay and Dr. Shin to address title issues, due diligence issues, and Holladay's concerns about costs of relocating utilities.

10.    In continuing to work with Holladay and Dr. Shin, Lisa Benjamin and I analyzed the potential economic returns for the remaining portion of the Property, and advised Dr. Shin that selling the remainder of the Property for redevelopment would maximize economic benefits to Dr. Shin and Capitol Hill Group.

11.    During this period, the Bank Companies transferred its assets, including the employment services of Ms. Benjamin and myself and the contracts rights to compensation from Capitol Hill Group and Dr. Shin, to a new company, Plaintiff Newmark of Washington D.C. LLC d/b/a Newmark & Bank Company ("Newmark")

12.    In September, 2000, Dr. Shin invited me for a round of golf. During our golf game, I told Dr. Shin that he had agreed to below market compensation for the initial services performed for Dr. Shin and Capitol Hill Group, but that the services in analyzing the economic benefits of selling the remainder of the Property, and negotiating the sale, called for the normal market rate of a 3% commission on the sale of the remainder of the Property, particularly because Capitol Hill Group and Dr. Shin would realize considerable return from the sale of the Property. Dr. Shin agreed to those terms.

13.    On September 29, 2000, I sent Dr. Shin a letter amending the March 27, 2000 letter agreement. The September 29, 2000 amended agreement provided that Newmark would earn a 1% commission on the sale of the first portion of the Property, and a 3% commission on

the sale of the remainder of the Property (described as lot 76, the North Tower). The September 29, 2000 amended agreement provided that the compensation for services at an hourly rate would terminate. Dr. Shin did not return a signed copy of the September 29, 2000 amended agreement, but never rescinded his oral agreement of those terms, and continued to employ the services of Newmark, Lisa Benjamin, and myself.

14.     As a direct result of our efforts, Defendant Capitol Hill Group concluded a contract to sell the remainder of the Property to Holladay. After concluding the contract to sell the remainder of the Property, Dr. Shin announced that he had no intention of paying anything more than $125 hour for the services of Newmark, The Bank Companies, Lisa Benjamin, and myself, and claimed that he had never agreed to pay percentage commissions.

15.     I understand that Capitol Hill Group closed on a portion of the Property in or about April, 2001. Although I believe Defendant Capitol Hill Group has already received a portion of the sale price for the Property, Dr. Shin and Capitol Hill Group have refused to pay Newmark the agreed commission.

16.     I recently learned that Holladay obtained approval to redevelop the Property, and that closing is likely to take place within the next 30 days. Based on my experience in the real estate market, people working in the real estate field create separate corporations to own individual pieces of property, to ensure that liabilities attaching to one property cannot be satisfied through the sale of other properties. Based on that ordinary practice, I believe that Defendant Capitol Hill Group is extremely unlikely to own any substantial assets other than the Property at issue in this case.

17. My attorney has provided me with copies of discovery requests that he hand-delivered on September 12, 2001 to counsel for Defendant Capitol Hill Group. Those discovery requests asked for information about any other assets owned by Capitol Hill Group and for information about the closing date for the sale of the remainder of the Property. Those discovery requests were due to be answered on Friday, October 12, but my attorney has not received any responses.

18. In addition, my attorney has provided me with copies of letters he wrote on September 13 and October 2, 2001, asking Capitol Hill Group to agree to place into an interest bearing escrow proceeds from the closing at on the Property, in an amount sufficient to satisfy our damage claims. The letters also asked Capitol Hill Group to identify any damages that Capitol Hill Group would suffer as a result of such an escrow. My attorney has received no response to either letter.

19. Plaintiff Newmark has a just right to recover what is claimed in the Complaint, calculated as follows:

    a. hourly compensation through September, 2000, at $125 per hour, an amount greater than $10,000;

    b. One percent of the purchase price for the sale of the first section of the Property, which was agreed at $96,000;

    c. Three percent of the purchase price for the sale of remainder of the Property, which was agreed at $199,500.

Accordingly, we are owed a minimum of $306,000.

21. I am not aware of any reason that depositing $306,000 from the proceeds of the

sale in an interest bearing escrow pending resolution of this case would cause any damages to Capitol Hill Group, and Capitol Hill Group has not responded to specific requests from my attorney to identify any such damages.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Laurence Bank