# ATTACHMENT 2

1/6/03

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: )<br>)<br>CAPITOL HILL GROUP, )<br>)<br>Debtor. )<br>) | Case Number 02-0359<br>Chapter 11 |

### AFFIDAVIT OF RITA BAMBERGER MADE IN CONNECTION WITH CAPITOL HILL GROUP'S OBJECTION TO THE PROOF OF CLAIM FILED BY NEWMARK OF WASHINGTON D.C. LLC d/b/a NEWMARK & BANK COMPANY

DISTRICT OF COLUMBIA ) ss.

Rita Bamberger, being first duly sworn upon oath, states and deposes as follows:

1. I am over the age of 18 and I am competent to testify as to the matters set forth herein based upon my personal knowledge. If called to testify, my testimony would be consistent with that set forth in this Affidavit.

2. My name is Rita Bamberger. I am a Vice President at The Holladay Corporation ("**Holladay**").

3. In my professional capacity, I was the lead negotiator at Holladay with respect to (a) that certain Purchase and Sale Agreement dated as of March 24, 2000, by and between Holladay and Capitol Hill Group ("**CHG**") (the "**March 2000 Sale Agreement**"), and (b) that certain Purchase and Sale Agreement dated as of December 8, 2000, by and between Holladay and CHG (the "**December 2000 Sale Agreement**," together the "**Sale Agreements**").

4. Holladay retained Julien Studley, Inc. ("**Studley**") to make Holladay's initial contact with CHG. Holladay's retention agreement with Studley was executed by both Studley and Holladay in approximately April 2000.

5. In connection with this transaction, I learned that CHG had retained Mr. Laurence D. Bank ("**Bank**"), or his company to provide CHG with certain services.

6. Studley's initial contact at CHG was Dr. Peter Shin ("**Dr. Shin**").

7. Holladay was not introduced to CHG or Dr. Shin by Bank, and CHG and Dr. Shin were not introduced to Holladay or Studley by Bank.

8. During the course of negotiations with CHG, Dr. Shin indicated to me that Bank was being paid as a consultant/advisor to CHG. Dr. Shin mentioned that Bank was being compensated on an hourly basis.

9. At all times during Holladay's negotiations with CHG, I viewed Bank as an "advisor" to CHG. I had no reason to believe that the role of Bank in the transaction was that of a broker, entitled to a commission.

10. Section 5.3 in the March 2000 Sale Agreement is identical to Section 5.3 in the December 2000 Sale Agreement ("**Section 5.3**"). It reads in full:

> 5.3   Broker.   Seller and Purchaser each represents to the other that it has had no dealings, negotiations, or consultations with any broker, representative, employee, agent or other intermediary in connection with the sale of the Property, except that Purchaser has used the services of Julien J. Studley, Inc. (the "Broker") and Purchaser shall be solely responsible for paying the fees and commissions owed to the Broker, pursuant to a separate written agreement and except that Seller has used the services of The Bank Companies (the "Bank Companies") and Seller shall be solely responsible for paying the fees and commissions owed to the Bank Companies, pursuant to a separate written agreement. Seller and Purchaser agree that each will indemnify, defend and hold the other free and harmless from the claims of any other broker(s), representative(s), employee(s), agent(s) or other intermediary(ies) claiming to have represented Seller or Purchaser, respectively, or otherwise to be entitled to compensation in connection with this Agreement or in connection with the sale of the Property. This mutual indemnity shall survive Closing and any termination of this Agreement.

11. I was directly involved with the negotiation of Section 5.3.

12. I have no recollection of discussing the terms of Section 5.3 with Bank or his colleagues.

13. The sum and substance of the negotiations on Section 5.3 were simply to recognize that real estate services companies were involved in the transaction and to recognize that they were to be paid pursuant to separate agreements outside of the sale contract; that Studley would be compensated by Holladay (not CHG) pursuant to our signed, written agreement with Studley, and that Bank would be compensated by CHG (not Holladay) pursuant to any agreement it had with Bank.

14. Except to recognize that CHG would compensate Bank in accordance with a contract, if any, that might exist between CHG and Bank, Bank was not intended by Holladay to be a beneficiary of or under Section 5.3 or either of the Sale Agreements.

15. Holladay intended that, at least as to Holladay, any "separate written agreement" with a "Broker" would be in writing and signed by the Broker and the seller or buyer, as the case may be; which in fact was the case as between Holladay and Studley.

16. I have never seen any agreements or letters between CHG and Bank. Holladay did not care whether there was or was not an agreement between Holladay and Bank, so long as Holladay was not responsible for paying anything to Bank in connection with the transaction.

17. During the course of our negotiations with CHG, Dr. Shin explained to me that he agreed to compensate Bank as a consultant on our transaction.

Further affiant saith not.

_____
Rita Bamberger

Subscribed and sworn to before me

This 10th day of February, 2003.

*[signature]*

**F. M. KERNS**
**NOTARY PUBLIC DISTRICT OF COLUMBIA**
My Commission Expires: September 30, 2005

4